**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| **JIM MILLER FURNITURE, INC.** ) | |
| **2960 Dayton Rd.** ) | **CIVIL ACTION NO._____** |
| **Springfield, Ohio 45506** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **MORRIS FURNITURE** ) | |
| **COMPANY, INC.** ) | |
| **c/o Edward M. Kress Esq.** ) | |
| **Statutory Agent** ) | |
| **1 South Main Street** ) | |
| **Dayton, Ohio 45402** ) | |
| ) | |
| **Defendant** ) | |

## COMPLAINT
**(Injunctive Relief Requested)**
**(Jury Trial Demanded)**

Now comes Plaintiff, **JIM MILLER FURNITURE, INC.,** by and through undersigned

counsel, and for its Complaint against Defendant Morris Furniture Company, Inc. states and

avers as follows:

## THE PARTIES

1.     Plaintiff Jim Miller Furniture, Inc. ("Plaintiff") is, and was at all relevant times, an Ohio

corporation with its principal place of business located at 2960 Dayton Rd., Springfield, Ohio

45506.

2. Defendant Morris Furniture Company, Inc. ("Morris") is, and was at all relevant times, an Ohio corporation with its principal place of business located at 2377 Commerce Center Blvd., Fairborn, Ohio 45324. Morris is a direct competitor of Plaintiff.

## JURISDICTION AND VENUE

3. This Complaint includes a claim for false advertising in violation of 15 U.S.C. § 1125(a)(1)(B). This Court has federal question jurisdiction over this claim pursuant to 28 U.S.C. § 1331.

4. This Court has supplementary subject matter jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 as this claim is so related to the federal claim, that it forms part of the same case and controversary.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).

## STATEMENT OF OPERATIVE FACTS

6. After returning from World War II in 1945, Jim Miller began selling appliances and furniture in the greater Dayton, Springfield and Xenia markets. Over the course of the next sixty years, Jim and his family steadily grew the business and in 1972 opened a factory and showroom in Enon, Ohio.

7. From his humble beginnings until the time of his passing over sixty years later in 2016, Jim Miller built a reputation for providing quality products and outstanding craftsmanship and for the honesty and integrity with which he dealt with his clientele.

8. Following his passing, Jim Miller's son Jeff Miller, who had assisted his father for many years, took over the family business and continues to serve the greater Dayton, Springfield and Xenia areas by providing high quality and affordably priced furniture and mattresses.

9.     For several decades, Jim Miller Furniture has been in direct competition with Morris Furniture Company ("Morris").  Morris is one of the largest furniture stores in Ohio with more than 450 employees and operating Morris Home Furnishing and Ashley Furniture Home Stores in the Dayton, Columbus, Cincinnati and Northern Kentucky markets.

10.    As of the time of this Complaint, Morris and Plaintiff are direct competitors selling similar and, in many cases, identical home furnishings[1].

11.    In order to generate sales, Morris advertises extensively on its website, by email, on the internet, in newspapers and on radio and TV.

12.    For many years prior to his death, Jim Miller complained about Morris's advertising practices.  Since Jeff Miller has resumed his father's business, these practices—which uniformly are based on false and deceptive comparison reference pricing—have continued to harm Jim Miller Furniture and other local furniture retailers.

13.    As Morris' advertising makes clear, Morris is perpetually conducting "sales" which falsely offer deep discounts (usually 50% off) the "market price".  In its advertising, Morris defines—in small print—the "market price" as the regular price or original price for the item or comparable item at another retail store."  An example of one such "50% Off" sale is depicted below:



---

[1] Morris and Plaintiff both market and sell Ashley brand home furnishings.

14.     As shown below, in such ads, Morris gives two prices for the sales item—a higher reference price and a lower sales price or "final price":



15.     The Morris ads quantify, in terms of a percentage, the difference between the market price and the final price, explicitly representing the "% Savings" Morris is purportedly providing to consumers.  By way of example, as depicted above, the Koda sofa, a product listed with a reference price of $2,599.00 and a final price of $699.00 is advertised as a savings of 73%.

16.     When viewing the Morris ads, consumers are led to believe that the merchandise was sold by Morris or in the market generally at the "market price" and that Morris is offering to sell these products at a discounted sales price, resulting in the specified % savings to the consumer.

17.     When viewing the Morris ads, the consumers are further led to believe that the true value of the products on sale is equal to the "market price" and that Morris is offering to sell the products to consumers at a sales price that is less than what the products are actually worth. Thus, the average consumer believes that he or she is getting a great deal when purchasing the products on sale from Morris.

18.     The market prices listed in the Morris ads do not, however, represent actual prices at which the same items, or even comparable items, were ever sold or offered for sale for any substantive period of time by Morris or any other retailer in the area.  In truth, Morris's "market

price" is **wholly fictitious** and concocted by Morris to create the false and misleading impression in the minds of consumers that the items are being offered for sale at a steep discount.

19.     Over the past several decades, research on the effects of reference prices demonstrates that reference prices cause consumers to believe that the higher reference reflects the value of the product, increases consumers' willingness to make the purchase at the lower advertised price[2] , and decreases consumers' intentions to search for a lower price[3].

20.     When a reference price is bona fide, it may be helpful in assisting consumers in making informed purchasing decisions.  When it is not, as in the case of Morris's advertising, it is plainly harmful to consumers as it deprives consumers of an opportunity to accurately evaluate the offer and results in purchasing decisions based on false pretenses.

21.     On information and belief, consumers purchase furniture from Morris in reliance on Morris's false and misleading comparison reference pricing, and such false and misleading representations are likely to and did influence customer purchasing decisions.

22.     Morris's false and misleading comparison reference pricing has allowed Morris to sell its products at a high mark-up and has diverted potential purchasers away from Plaintiff and other local retailers.

23.     As a direct and proximate result of Morris's false and misleading comparison reference pricing advertising, Plaintiff has suffered harm in excess of $150,000.00, including loss of sales,

---

[2] See e.g.  Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices:  The Moderating Role of Involvement*.  79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing, 512 (2012).
[3] Gorkan Ahmetoglu et al. Pricing Practices: *A Critical Review of Their Effects of Consumers*, 21 J. Retailing & Consumers Services 696,699 (2014); See Larry D. Compeau et al.  *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002) ("Advertisers' attempt to enhance consumers' perceptions of the value of a deal by using comparative price advertisements, in which they. . .compare the selling price to some suggested reference price, is widespread. . . .[A] critical issue concerns the deceptive power of comparative price advertising that provides inflated and exaggerated reference prices").

loss of customers, loss of revenue, loss of business opportunity, higher costs, loss of consumer

confidence and consumer confusion.

<u>**FIRST CAUSE OF ACTION**</u>
**(False Advertising under Section 43(a) of the Lanham Act)**

24.     Plaintiff incorporates the averments contained in paragraphs one (1) through twenty-three

(23) of the Complaint as if fully rewritten hereunder.

25.     Morris has made and distributed, in interstate commerce, advertisements that contain

false or misleading price comparisons.

26.     These advertisements contain actual misstatements and/or misleading or deceptive

statements as set forth above.

27.     Morris's false and misleading statements in its advertisements actually deceive or have a

tendency to mislead and deceive a substantial portion of Morris's and Plaintiff's customers and

potential customers.

28.     Morris's false and misleading statements in its advertisements are material in that they

are likely to influence consumers' purchasing decisions.

29.     Morris's false and misleading statements in its advertisements injure Plaintiff's

commercial interests by inducing consumers to purchase Morris's furniture instead of Plaintiff's

furniture.

30.     Morris's false and misleading statements in its advertisements have negatively impacted

and continue to negatively impact Plaintiff's sales.

31.     Morris's false and misleading statements in its advertisements have damaged Plaintiff's

reputation as a retailer of affordably priced home furnishings as Morris's fraudulent price

comparisons create the impression that Plaintiff's home furnishings are overpriced.

32.     Morris's false and misleading statements in its advertisements violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

33.     Morris has caused and will continue to cause immediate and irreparable injury to Plaintiff, including injury to its business, reputation, and goodwill, for which there is no adequate remedy at law.  Plaintiff is therefore entitled to an injunction restraining Morris from engaging in further acts of false advertising and/or ordering the removal of all false advertising.

34.     Plaintiff is entitled to recover from Morris damages as a result of Morris's acts in violation of Section 43(a) of the Lanham Act as well as Morris's gains, profits and advantages that it has obtained as a result of its unlawful acts and the costs of this action.

35.     On information and belief, Morris's aforementioned unlawful conduct was undertaken willfully and with the intention of causing confusion, mistake and deception.

### SECOND CAUSE OF ACTION
**(Violation of the Ohio Deceptive Trade Practices Act)**
**R.C. § 4165 et seq.**

36.     Plaintiff incorporates the averments contained in paragraphs one (1) through thirty-five (35) of the Complaint as if fully rewritten hereunder.

37.     Plaintiff is and was at all relevant times a "person" as defined by R.C. § 4165.01(D).

38.     Morris is and was at all relevant times a "person" as defined by R.C. § 4165.01 (D).

39.     The Ohio Deceptive Trade Practices Act ("ODTPA") provides that it is a deceptive trade practice when, in the course of business, an entity makes false statements of fact concerning the reasons for, existence of, or amounts of price reductions.  See R.C. § 4165.02(12).

40.     In accordance with the provisions of Ohio Administrative Code ("OAC") 109:4-3-12, it is deceptive for a supplier in its out-of-store advertising to use as a reference price in making a price comparison any "list," "catalogue," "manufacturer's suggested," "competitor's," or any

other price which is not its own unless: (a) such a reference price is genuine; and (b) the advertisement clearly and conspicuously indicates that the reference price is not the supplier's own price. As this section of the OAC further provides, "for a reference price which is not a supplier's own to be genuine, it must correspond to prices at which substantial offers for sales have recently been made at retail outlets in the trading area in which the goods or services are offered at the reference price, and it must not be an isolated price."[4]

41.     The Ohio Attorney General has commented:

> [p]rice comparisons must be based on truth (O.A.C. 109:4-3-12). In advertisements, sellers must not make misleading price comparisons that create false expectations in the minds of consumers. If ads include terms such as "discount," "bargain," "outlet," "wholesale" or "factory prices," the terms must accurately describe the products offered for sale. For example, a seller may not advertise that its televisions are "Regularly $5,000, Now $3,000," unless $5,000 actually is the regular price of that particular kind of television.

42.     Morris's false and misleading price comparison advertising constitute direct and continuing violations of the ODTPA.

43.     On information and belief, Morris knowingly, willfully and intentionally engaged in the above-described violations of the ODTPA.

---

[4] Similarly, 16 C.F.R. § 233.2 makes it clear that a direct price comparison is deceptive unless the reference price used is a **real price** at what that particular item is or was actually sold in a sufficient number of sales in the seller's area. Specifically, 16 C.F.R. § 233.2(a) provides as follows:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading. Whenever an advertiser represents that he is selling below prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area— that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or savings.

*Id.*

44.    In accordance with R.C. § 4165.03, "[a] person who is likely to be damaged by a person who commits a deceptive trade practice that is listed in division (A) of section 4165.02 of the Revised Code may commence a civil action for injunctive relief against the other person, and the [Court] involved in that action may grant injunctive relief based on the principles of equity and on the terms that the court considers reasonable.  Proof of monetary damage or loss of profits is not required in a civil action. . ."

45.    Actual damages may also be recovered in accordance with R.C. § 4165.03(A)(2).

46.    An award of attorney's fees may be assessed against a defendant in the event the defendant has "willfully" engaged in a prohibited trade practice.  See R.C. § 4165.03(B).

47.    As a result of Morris's unlawful advertising, Plaintiff has suffered damages in an amount exceeding $150,000.00.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

A.    Award Plaintiff compensatory and exemplary damages, including income and profits Plaintiff lost and may lose in the future as a result of Defendant's unlawful activities set forth herein, in an amount in excess of $150,000.00 to be proven at trial;

B.    Award Plaintiff prospective corrective advertising damages sufficient that it can run corrective advertising;

C.    Award Plaintiff the profits generated by Morris for Morris's false advertising and other violations of the Lanham Act;

D.    Preliminary and permanently enjoin Morris, its agents, servants, representatives, employees, privies, successors and assigns, and all claiming rights through it, from making any false and misleading price comparison statements in its advertising and promotion of its home furnishings;

E. Order Morris to produce and disseminate no less than $20,000.00 per month in corrective television, radio, internet and print advertising dispelling its prior false and misleading price comparisons, for a period of no less than one (1) year;

F. Award Plaintiff pre-judgment and post-judgment interest at the legal rate;

G. Award Plaintiff its reasonable attorneys' fees and expenses of litigation;

H. Assess all costs against Morris; and

I. Grant Plaintiff such further and additional relief as Plaintiff may be entitled at law or in equity.

Respectfully Submitted,

JIM MILLER FURNITURE, INC.
By Its Attorney,

/s/RICHARD B. REILING
RICHARD B. REILING #0066118
63 Atlantic Ave., 3rd FL.
Boston, MA 02110
(617) 412-4291
richard@bottonereiling.com
**Ohio Address:**
6135 Memorial Dr., Ste. 102 A
Dublin, Ohio 43017

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial on all issues triable to a jury.

/s/RICHARD B. REILING
RICHARD B. REILING #0066118
Attorney at Law